UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CHRISTIE MICHELE WANDRIE,

        Debtor.
_____/

GENE R. KOHUT, TRUSTEE,

        Plaintiff,

v.

CHRISTIE MICHELE WANDRIE,

        Defendant.
_____/

Case No. 13-44268

Chapter 7

Judge Thomas J. Tucker

Adv. Pro. No. 13-4636

**MEMORANDUM SUPPLEMENTING THE COURT'S FEBRUARY 5, 2014 BENCH OPINION REGARDING THE PARTIES' CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

This adversary proceeding came before the Court for a hearing on February 5, 2014, on the parties' cross-motions for partial summary judgment (Docket ## 23, 29). During the hearing, the Court gave an oral bench opinion regarding the motions. During that bench opinion, the Court referred to the transcript of a bench opinion that the Court gave recently in another adversary proceeding. For the parties' reference, the Court now attaches to this Memorandum a copy of that transcript.

**Signed on February 5, 2014**

        /s/ Thomas J. Tucker\
        **Thomas J. Tucker**\
        **United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: DANIEL M. MCDERMOTT,.          Adv. No. 13-04701
.
            Plaintiff,  .          Detroit, Michigan
        v.             .          January 29, 2014
.          11:56 a.m.
      FRANK P. SCHWENCK,  .
.
            Defendant.  .
. . . . . . . . . . . . . .


        EXCERPT OF HEARING RE. U.S. TRUSTEE'S MOTION FOR
            SUMMARY JUDGMENT (OPINION OF THE COURT)
            BEFORE THE HONORABLE THOMAS J. TUCKER
            UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Plaintiff:  Office of the United States Trustee
                    By:  SEAN M. COWLEY
                    211 West Fort Street, Suite 700
                    Detroit, MI  48226
                    (313) 226-3432

For the Defendant:  Ruggirello Valardo Novara & Beek, PC
                    By:  ARMAND VELARDO
                    65 Southbound Gratiot Avenue
                    Mt. Clemens, MI  48043-5545
                    (586) 469-8660

Court Recorder:     Jamie Laskaska
                    United States Bankruptcy Court
                    211 West Fort Street
                    21st Floor
                    Detroit, MI  48226-3211
                    (313) 234-0068

Transcribed By:     Lois Garrett
                    1290 West Barnes Road
                    Leslie, MI  49251
                    (517) 676-5092


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

- - -

THE COURT:  All right.  Thank you both.  I'm going
to rule on the motion now with an explanation of my ruling.
First, the Court notes that it has subject matter
jurisdiction over this adversary proceeding, which involves
an objection to the Debtor's Chapter 7 discharge by the
United States Trustee under Section 727(a)(4)(A) of the
Bankruptcy Code.  The Court has subject matter jurisdiction
over the adversary proceeding under 28 U.S. Code, Section
1134(b), 157(a), 157(b)(1), and also U.S. District Court's
Local Rule 83.50 relating to bankruptcy cases and proceedings
referred to the Bankruptcy Court in this district by the
District Court.  This is a core proceeding under 28 U.S.
Code, Section 157(b)(2)(J).

The U.S. Trustee seeks summary judgment in its
current motion denying the debtor's discharge under Section
727(a)(4)(A) of the Bankruptcy Code.  That provision -- under
that provision, the debtor is denied a discharge if the Court
finds that, quote, "the debtor knowingly and fraudulently in
or in connection with the case made a false oath or account,"
unquote.  That's Section 727(a)(4)(A).

The case is before me now on a motion for summary
judgment rather than for a decision after a trial, and the
Court must apply the standards and principles that case law
has developed for ruling on motions for summary judgment

1   under Federal Civil Rule 56.  I have written in opinions in

2   other cases in the past about those standards, and I don't

3   want to repeat all of that discussion here verbatim.  Rather,

4   I'm going to incorporate by reference into this bench opinion

5   what I have said in a prior published opinion on that

6   subject, and that's the -- my opinion in the case of McCallum

7   versus Pixley, P-i-x-l-e-y, In re. Pixley, 456 Bankruptcy

8   Reporter 770 at pages 774 to 75, a decision of mine from

9   2011.  I had a section there called summary judgment

10  standard, section three on those pages, and I'm incorporating

11  by reference now everything I say there and applying it in

12  deciding the motion in this case.

13          I will note a couple of things from that discussion,

14  however, and highlight them, and that is first that in ruling

15  on a motion for summary judgment, the Court must construe the

16  evidence in the light most favorable to the nonmoving party

17  or, put another way, the Court must believe the evidence of

18  the nonmovant and draw all justifiable inferences in favor of

19  the nonmovant from that evidence, and, secondly, that where

20  the summary judgment movant, the moving party, meets their

21  burden -- initial burden of showing that there is no genuine

22  issue of material fact and that the moving party is entitled

23  to judgment as a matter of law by relying upon any of the

24  evidentiary sources listed in Federal Civil Rule 56(c) or

25  relying upon the failure of the nonmoving party to produce

1   any evidence which would create a genuine issue dispute of

2   fact for the trier of fact, once the moving party meets that

3   burden, the burden of going forward shifts to the nonmoving

4   party, which, in this case, of course, is the defendant-

5   debtor, to produce evidence that results in a conflict of

6   material fact to be resolved by the trier of fact.  In

7   considering the Rule 56(c) materials and evidence in the

8   record in determining how to rule on the motion for summary

9   judgment, the Court must rule for the moving party if the

10   evidence is insufficient to reasonably support a verdict in

11   favor of the nonmoving party.  In that regard, the mere

12   existence of a scintilla of evidence in support of the

13   nonmoving party's position will be insufficient.  Rather,

14   there must be evidence on which the trier of fact could

15   reasonably find for the nonmoving party, again, in this case,

16   the defendant-debtor.  Put another way, the record, taken in

17   its entirety -- if that record, taken in its entirety, could

18   not convince a rational trier of fact to return a verdict in

19   favor of the nonmoving party, the motion for summary judgment

20   should granted.

21        So applying those principles to this motion along

22   with the other principles that I discussed in the Pixley

23   opinion that I incorporated by reference, I want to discuss

24   the merits of the motion.  First of all, this being an

25   objection to discharge based on the false oath provisions of

1   Section 727(a)(4)(A), the Sixth Circuit in the <u>In re. Keeney</u>

2   case has laid out the elements for such an objection to

3   discharge claim. The parties agreed on those elements, and

4   the elements are these. First, the plaintiff here, the U.S.

5   Trustee, must prove by a preponderance of the evidence first

6   the debtor made a statement under oath; second, the statement

7   was false; third, the debtor knew the statement was false;

8   four, the debtor made the statement with fraudulent intent;

9   and, five, the statement related materially to the bankruptcy

10   case. In this case -- and that, by the way, is from the

11   Sixth Circuit's decision in <u>Keeney</u> versus <u>Smith</u>, <u>In re.</u>

12   <u>Keeney</u>, 227 Federal Reporter 3d 679 at page 685, Sixth

13   Circuit decision from 2000.

14       In this case, in responding to the summary judgment

15   motion, the defendant-debtor stated in his brief in

16   responding to the summary judgment motion that the debtor

17   admits that elements one, two, and three of the <u>Keeney</u> case

18   for a false oath claim are established and admits those

19   elements but disputes elements four and five, those elements,

20   four and five, being that the debtor made the statement or

21   statements with fraudulent intent, and, five, that the

22   statement related materially to the bankruptcy case.

23       Now, the basis of the U.S. Trustee's false oath

24   claim is that the debtor made false statements under oath for

25   purposes of Section 727(a)(4)(A) in several respects. With

 1  respect to the summary judgment motion, the U.S. Trustee
 2  focuses on the following false statements, all of which the
 3  debtor admits were false.  First, the debtor's failure in the
 4  Schedule B that the debtor filed at Docket Number 1 in the
 5  main bankruptcy case on March 25, 2013, the date of the
 6  bankruptcy petition, in which the debtor, in response to Item
 7  Number 25 in Schedule B, indicated that the debtor did not
 8  have any ownership interest in any automobiles, trucks,
 9  trailers, or other vehicles and accessories.  In making that
10  statement, the debtor -- that statement was false because, as
11  the parties agree, the debtor at that time at the date of the
12  petition did have an ownership interest in -- that should
13  have been listed there in a 2002 GMC Envoy vehicle.

14          The next false statement or the next series of false
15  statements alleged by the U.S. Trustee in support of this
16  summary judgment motion have to do with the debtor's failure
17  to list in answering Question 10 on the statement of
18  financial affairs that the debtor filed with the petition on
19  March 25, 2013, at Docket Number 1 in the main case transfers
20  that the debtor had made within two years before filing the
21  petition that should have been disclosed.  In answering
22  Question 10 of the statement of financial affairs, the debtor
23  did disclose a transfer of a 1989 Chris-Craft boat, 42-foot
24  boat, but no other transfers.  Section -- Part 10 or Question
25  10 of the statement of financial affairs required the debtor

1  to list all property other than property transferred in the

2  ordinary course of the business or financial affairs of the

3  debtor transferred within two years immediately preceding the

4  commencement of the case.  Within that two-year pre-petition

5  period, it is undisputed by the debtor the debtor had made

6  other transfers of property.  Those transfers include the

7  debtor's transfer of a 1971 Dodge Dart and a 2008 Chevy

8  Trailblazer vehicle.  Those transfers should have been listed

9  in answering Question 10 of the statement of financial

10 affairs, debtor agrees, but they were not.  The U.S. Trustee

11 also argued in the summary judgment motion that there was a

12 third vehicle transferred by the debtor that should have been

13 listed in answering Question 10 to the statement of financial

14 affairs, that being the 2009 Dodge Challenger.  However, the

15 Court cannot grant the summary judgment for the plaintiff,

16 U.S. Trustee, based on that transfer and the failure to list

17 that transfer in answering Question 10 of the statement of

18 financial affairs by the debtor because the U.S. Trustee has

19 failed to show for purposes of summary judgment reasons that

20 the transfer of that vehicle occurred within two years before

21 the bankruptcy petition date.  To the contrary, the

22 allegation in the U.S. Trustee's complaint -- in paragraph 11

23 of the complaint states a transfer date that is more than two

24 years before the date of the March 25, 2013, bankruptcy

25 petition filing, in which case there was no duty by the

1   debtor to list that transfer in answering Question 10 of the

2   statement of financial affairs.

3           Within the two-year period, however, also, the

4   debtor -- there is no dispute the debtor also made transfers

5   of his interest in two items or pieces of real property,

6   property located on Andrews Drive in Sterling Heights,

7   Michigan, and the property on Irma in Warren, Michigan.

8   Those should have been listed but were not listed in

9   answering Question 10 of the statement of financial affairs

10   when the debtor filed this case and filed the statement of

11   financial affairs. Those then were admittedly false -- there

12   was then admittedly a false statement because the debtor

13   failed to list those transfers in answering Question 10 of

14   the statement of financial affairs that I've pointed to.

15           Additional false statements under oath that the

16   debtor made -- and there's really no genuine dispute about

17   this -- occurred during the debtor's testimony at the first

18   meeting of creditors held under Section 341 of the Bankruptcy

19   Code. That was held on May 2, 2013. The debtor testified

20   under oath, and the transcript of that testimony appears as

21   Exhibit 2 to the U.S. Trustee's motion, Docket Number 19.

22   Now, the debtor's false statements in that transcript include

23   the following. First, on page 4 of the transcript, the

24   debtor testified that there were no errors or omissions in

25   his petition and schedules and that he listed all of his

1   assets and all of his creditors in the schedules.  That's

2   page 4 of the transcript.  That's false because -- for the

3   reasons I've discussed, because of the omissions from the

4   schedule and statement of financial affairs I've described.

5            An additional false statement that clearly appears

6   from the transcript of the first meeting of creditors appears

7   at pages 31 and 32 of the -- 31 to 32 of the 341 hearing

8   transcript.  Prior to that point in the debtor's testimony in

9   the 341 meeting, the debtor had disclosed and been questioned

10  about and discussed in his testimony his pre-petition

11  transfer of the Irma property -- I'm sorry -- the Andrews

12  property, not the Irma, the Andrews property, and that

13  includes the testimony beginning at page 18 of the transcript

14  and carrying over to the next page.

15           Then later in the 341 meeting at pages 31 to 32 of

16  the transcript, the debtor was questioned in this way and

17  gave this answer, quote,

18               "So you haven't sold or transferred anything in

19               the last two years other than that and the -- but

20               you also said that you had a property that you and

21               your wife sold in January?

22           Answer:  January; correct," unquote.

23           The reference to the property sold in January was

24  the Andrew property, and the -- other than that reference in

25  that question was clearly to the Chris-Craft boat, which had

been discussed in the previous question and answer, and so
the debtor was asked in that question whether -- other than
the Chris-Craft boat and the Andrew property, whether he had
sold or transferred anything in the last two years other than
those items, and he -- and the question was, "So you haven't
sold or transferred any such property?" in essence, and the
debtor answered, "Correct."  That's a false statement because
of the other transfers that occurred in the two-year pre-
petition period that I've already described, which are
admitted by the debtor.

I note also that while this may not be a -- some
room for argument may exist with respect to whether this is
a -- itself a false oath or false statement, I noted -- I
notice for purposes of determining the element of whether the
debtor acted with -- or failed to disclose items or made
false oaths with fraudulent intent and the totality of the
circumstances relating to the Court's determination of that
factor or that element in Keeney, I would note also that in
the 341 meeting shortly after his testimony that I just
referred to on pages 31 to 32, the trustee's attorney made
the following statement as essentially a wind-up to -- or
part of a warm-up to or wind-up to a question.  The statement
at page 32, lines 17 to 19, was quote, "So no vehicles in
your name, haven't transferred anything other than the Chris-
Craft boat and the house that was this year, and then -- all

1   right, all right." And then she went on to ask a question

2   about other things. That statement was made in the debtor's

3   presence, and the debtor did not make any statement after

4   that and after hearing the trustee's attorney say that to

5   correct the trustee attorney's impression, as evidenced by

6   that statement, that the debtor had no vehicles in his name

7   and that he had not transferred anything other than the

8   Chris-Craft boat and the Andrew property. Of course, the

9   debtor had transferred other properties within the two-year

10  pre-petition period, as I've described, and did have a

11  vehicle in his name, as I have described. He did nothing to

12  correct that impression, which the trustee's attorney clearly

13  had and expressed at that point in the 341 meeting.

14          I've described the false statements that the debtor

15  admittedly made in Schedule B of the statement of financial

16  affairs and in the 341 meeting. All of those are false

17  statements, and with respect to all of those false statements

18  that I have described, it is clear and there's no genuine

19  issue of material fact with respect to elements one through

20  three of the Keeney list -- Keeney case list of elements for

21  a false oath claim under Section 727(a)(4)(A) and with

22  respect to all of those false statements and nondisclosures

23  that I have described as being established. The debtor

24  admits that much expressly in the debtor's brief responding

25  to the trustee -- U.S. Trustee's summary judgment motion. I

1   find -- and so the U.S. Trustee, at a minimum, is entitled to
2   summary judgment with respect to those first three elements
3   under the Keeney list of elements with respect to each of the
4   false statements and nondisclosures that I have described and
5   found here.

6           The debtor -- with respect to the issue of
7   materiality, the fifth element listed under Keeney -- that
8   is, the requirement that the U.S. Trustee show that the false
9   statement or statements related materially to the bankruptcy
10  case -- the debtor argues that the statements in question,
11  the false oaths or false statements in question were not
12  material under that element because they don't -- or they did
13  not have any material economic value or opportunity for the
14  bankruptcy estate and the Chapter 7 trustee essentially.  The
15  debtor is wrong, however, because materiality -- the
16  materiality element there in Keeney means something other
17  than that, other than the transfer not disclosed or the asset
18  not disclosed had little or no value to the -- or presented
19  little or no opportunity to obtain value for the bankruptcy
20  estate.  That's not the test.  The Sixth Circuit in the
21  Keeney case, 227 Federal Reporter 3d at page 686, said that,
22  quote, "The subject of a false oath is material if it bears a
23  relationship to the bankrupt's business transactions or
24  estate, or concerns the discovery of assets, business
25  dealings, or the existence and disposition of his property,"

1   unquote."  And I'm omitting -- the Sixth Circuit there was

2   quoting another case.  I'm omitting that citation here.

3   Clearly and without genuine dispute, it's clear that if the

4   trustee is entitled to summary judgment as a matter of law,

5   that the materiality element under the Keeney case, as

6   defined by the Sixth Circuit in Keeney, is established by a

7   preponderance of the evidence and without genuine dispute

8   here at this summary judgment stage with respect to every one

9   of the false oaths and nondisclosures that I have described

10  as having been made by the debtor because the debtor's

11  failure to disclose the vehicle in Schedule B and the

12  debtor's failure to disclose the transfers in Question 10 to

13  his statement of financial affairs and the debtor's false

14  statements in his sworn testimony in the 341 meeting that

15  I've described all met the test of materiality -- meet the

16  test of materiality under Keeney.  They all relate to the

17  debtor's estate or concern the discovery of assets, business

18  dealings, or the existence and disposition of his property.

19  Obviously disposition of the debtor's property relates to

20  transfers and includes any transfers of property made by the

21  debtor within the two years preceding the filing of the

22  bankruptcy case that the debtor is required to disclose in

23  answering Question 10 of the statement of financial affairs,

24  and so the U.S. Trustee is entitled to summary judgment with

25  respect to the fifth element under Keeney and materiality.

1    So what that leaves then is element number four,

2  which is really the primary dispute here between the parties;

3  that is, the requirement that the U.S. Trustee show that the

4  debtor made the statement or false statements with fraudulent

5  intent.  U.S. Trustee argues that, based on Keeney -- citing

6  Keeney and other cases that the U.S. Trustee can meet the

7  burden of demonstrating this element with respect to the

8  false statements in several ways.  One way in which the U.S.

9  Trustee says the U.S. Trustee can meet this requirement is by

10 showing that the debtor had a reckless disregard as to

11 whether his representations or his statements that we -- that

12 the Court has found to be false were true.  The Sixth Circuit

13 in the Keeney case at page 686, 227 Federal Reporter 3d at

14 686, stated, quote, "A reckless disregard as to whether a

15 representation is true will also satisfy the intent

16 requirement," unquote, and I'm omitting citations here.  The

17 Court then immediately said, quote, "Courts may deduce

18 fraudulent intent from all the facts and circumstances of a

19 case," unquote, citing -- and I'm omitting citations here.

20 Then the Court said, quote, "However, a debtor is entitled to

21 discharge if false information is the result of mistake or

22 inadvertence," unquote, and I'm omitting citations again.

23    So the first question is what does this passage in

24 the Keeney case mean with respect to reckless disregard?  The

25 U.S. Trustee has cited the Cutler case, a decision from this

1  court in 2003, decided by another judge of this court, as

2  well as the _Summers_ case, a 2005 decision by this court,

3  another judge of this court, in support of the trustee's

4  argument that the -- that a showing -- proving reckless

5  disregard by the debtor as to whether the false statements

6  are true alone may establish the requisite fraudulent intent

7  required by the _Keeney_ case, that if the U.S. Trustee shows

8  such reckless disregard, the U.S. Trustee has shown this

9  element, and that's the end of the matter.  I disagree with

10  that reading of _Keeney_ and with the U.S. Trustee's argument

11  regarding the law on this in this respect.  In my view, what

12  _Keeney_ means, the passage I just walked through from page 686

13  of _Keeney_, what _Keeney_ means -- and, of course, this Court is

14  bound by the Sixth Circuit cases, including _Keeney_ -- means

15  is that the Court must determine whether the debtor is guilty

16  of fraudulent intent in making false statements from all the

17  facts and circumstances presented, essentially a totality of

18  the circumstances type inquiry.  Among those are -- is

19  whether or not the debtor had a reckless disregard as to

20  whether or not the statements -- the false statements were

21  true.  If the Court finds that the debtor is guilty of such

22  reckless disregard, the Court may draw an inference and

23  deduce from that that the debtor is guilty of fraudulent

24  intent; however, the Court must consider all the facts and

25  circumstances and not just whether a debtor is guilty of

1    reckless disregard for the truth, and the reason for that is

2    because, as the Keeney court went on to say after its passage

3    regarding these points, reckless disregard, deducing

4    fraudulent intent from all the facts and circumstances, the

5    Sixth Circuit made clear that if false information or false

6    statements were the result of mistake or inadvertence, the

7    debtor is entitled to a discharge, so I view Keeney as

8    requiring the Court to consider all the facts and

9    circumstances, and if the Court may deduce fraudulent intent

10   or may draw an inference of fraudulent intent through -- if

11   the debtor is guilty of reckless disregard for the truth of

12   the statements, but the Court is not required to draw such an

13   inference -- or actually is not required to make a finding of

14   fraudulent intent solely because the plaintiff has shown a

15   reckless disregard by the debtor as to truth, ultimately,

16   it's all the facts and circumstances that the Court must

17   consider to determine whether the debtor is guilty of actual

18   fraudulent intent, and fraudulent intent under Keeney I view

19   to mean actual intent to defraud, such as an actual intent by

20   the debtor to conceal, for example, an asset that the debtor

21   wants to keep from -- for his or herself and not lose to the

22   administration of the bankruptcy case by disclosing it.  If a

23   debtor has that sort of intent, that's an example but not the

24   only type of -- but an example of the fraudulent intent that

25   would satisfy the fraudulent intent element in Keeney.

1  Obviously when the Sixth Circuit says that a debtor that's
2  guilty of only mistake or inadvertence as being the cause of
3  the false statements, that that's not enough to deny the
4  debtor a discharge under the five-element test in Keeney.

5       Applying -- and by the way, to the extent the Cutler
6  case, which is 291 Bankruptcy Reporter 718, in particular, at
7  page 726 and 727 of the opinion in that case, to the extent
8  that's inconsistent with the ruling and the view of law that
9  I just expressed and my view of Keeney that I just expressed,
10  I must respectfully disagree with it.  I'm not sure it is
11  inconsistent, but if it is, I disagree with it.  The Summers
12  case I make the same comment.  I note, however, that both the
13  Cutler case and the Summers case -- and Summers, by the way,
14  is 320 Bankruptcy Reporter 630, decision from 2005 from this
15  court.  Both the Cutler and the Summers cases I note in
16  passing here were cases decided after a trial, not on summary
17  judgment, with respect to the plaintiff's false oath claims
18  in those cases.

19       So, in my view, then, turning to the merits of the
20  argument further regarding fraudulent intent on the part
21  of -- alleged fraudulent intent on the part of the defendant-
22  debtor, in my view, the U.S. Trustee plaintiff has met its
23  burden as the moving party under Rule 56 of -- initial burden
24  of demonstrating that no genuine issue of material fact
25  exists and that the U.S. Trustee is entitled to judgment as a

1  matter of law such that and to the extent that the nonmoving
2  party, the defendant-debtor here, has had the burden of going
3  forward shifted to him to produce evidence that results in a
4  conflict of material fact.  Now, what we're talking about
5  here is the issue of fraudulent intent and that element only.
6  As I've already said, at a minimum, the U.S. Trustee is
7  entitled to summary judgment with respect to all the other
8  five elements under the Keeney false oath test with respect
9  to each of the false oaths and nondisclosures I have
10 described here in this opinion.  The question then is whether
11 the defendant-debtor met that burden imposed on him by the
12 case law under Rule 56.  Essentially, the burden that the
13 nonmoving party, defendant-debtor here, has had in responding
14 to this motion for summary judgment is to present or point to
15 evidence or materials of the type that the Court is permitted
16 to consider under Civil Rule 56, and those types of materials
17 include the following, which is the types of materials listed
18 in Federal Civil Rule 56(c)(1)(A).  They include -- they have
19 to be in the record, and they include depositions, documents,
20 electronically stored information, affidavits, or
21 declarations, stipulations, admissions, interrogatories, or
22 other materials.  It is not clear under Rule 56(c) as it was
23 most recently amended whether an unverified -- allegations
24 made in an unverified answer by defendant-debtor may be
25 considered by the Court as creating a genuine issue of

1    material fact at the behest of the defendant, who made --

2    filed that pleading.  Certainly admissions that the party

3    opponent wishes to use that are made by defendant-debtor in

4    an answer may be considered under Rule 56.  It's not clear --

5    as clear as perhaps it was before the recent amendments to

6    Rule 56 that an unsworn, unverified answer not verified

7    under -- either under oath or penalty of perjury by the

8    defendant-debtor may be considered by the Court.  It is

9    clear, however -- for purposes of enabling that party to

10    create a genuine issue of material fact or establish such a

11    genuine issue of material fact, it is clear that materials

12    that may be used, however, because they are under oath and

13    they are in the record is the debtor's Schedule B and

14    statement of financial affairs that were filed in the main

15    bankruptcy case at Docket Number 1 that I've cited to and

16    which the U.S. Trustee cites and has put in the record in

17    this adversary proceeding; the amended -- the amendments that

18    the debtor filed yesterday in the main bankruptcy case at

19    Docket Number 43 to the schedules and statement of financial

20    affairs, which the U.S. Trustee has asked the Court to

21    consider and debtor has agreed, and so the Court has

22    considered those; the transcript of the debtor's sworn

23    testimony in the 341 meeting, which I cited to and quoted

24    from earlier a bit.  All of those things may be considered by

25    the Court in ruling on this summary judgment motion, so what

1   do those things show?

2         With respect to the -- all of the nondisclosures and

3   false statements other than the debtor's failure to disclose

4   in the statement of financial affairs the transfer -- pre-

5   petition transfer of the Andrew property, with respect to

6   everything else, the other pre-petition transfers that I've

7   said should have been disclosed and weren't in the statement

8   of financial affairs as originally filed and the failure to

9   disclose the debtor's interest in the vehicle in Schedule B

10   that I've described, as -- with respect to all of those, the

11   evidence -- there is no evidence or Rule 56(c)-type materials

12   in the record which would support the debtor's argument that

13   his failure to disclose his false statements were by mistake,

14   done by mistake or inadvertence on his part rather than with

15   a fraudulent intent.  There is no evidence with one

16   exception, and that is -- well, there is no exception to that

17   statement.  There is, however, the debtor's testimony in the

18   341 meeting where on May 2, 2013, he testified under oath,

19   "Correct," the answer "Correct," to the question -- leading

20   question by the trustee's counsel at pages 31 to 32 that I

21   cited earlier, "So you haven't sold or transferred anything

22   in the last two years other than the Chris-Craft boat and the

23   Andrew property?"  The debtor answered, "Correct."  The

24   debtor there reiterated and made, once again, the false

25   statement and asked directly about the subject matter of

1   transfers in the last two years made a false statement under

2   oath by, again, failing to disclose the pre-petition

3   transfers other than the Andrew property, the transfers of

4   the two vehicles and the transfer of the Irma property.  So

5   the debtor not only made false statements in the Schedule B

6   and the statement of financial affairs that he signed and

7   verified under penalty of perjury and that were filed on

8   March 25, 2013, he compounded and reiterated those

9   nondisclosures and false statements in his sworn testimony in

10  the 341 meeting on May 2, 2013.

11          Now, one of the debtor's arguments in opposing the

12  summary judgment motion here is that the debtor believed that

13  he didn't have to disclose any pre-petition transfer where he

14  did not receive any money in exchange for the transfer such

15  as what he described as a short sale of the Irma and the

16  Andrew property which the bank -- the secured creditor bank

17  had all -- got all the money and all the proceeds, and the

18  debtor didn't get any of that money and a similar argument

19  regarding the vehicle transfers, the two vehicle transfers

20  that were not disclosed.  And the debtor also said that he --

21  anyway, the debtor argues he didn't believe that he had a

22  duty to disclose any of those things where he didn't get any

23  money for them; that if he got money for them, impliedly, the

24  debtor acknowledges he had a duty to disclose those

25  transfers.  There is, of course, no rational basis for the

1   debtor to have had such a belief in answering -- in reading

2   and answering the question, Item 10 on the statement of

3   financial affairs.  The question listed on that form, which

4   the debtor declared under penalty of perjury he had reviewed

5   and it was accurate -- his answer to it, the question

6   required the debtor to list all property other than property

7   transferred in the ordinary course of business or financial

8   affairs of the debtor within two years immediately preceding

9   the commencement of the case.  There's no qualification to

10  that requirement in the question or implied or express that

11  the transfer had to be a transfer in which the debtor

12  obtained -- actually received money for the transfer as

13  opposed to, for example, a secured creditor receiving all the

14  money.

15          Further, the debtor's statement -- or argument about

16  what he believed is not supported by any evidence in the

17  record, no affidavit, no Rule 56(c) materials, do not -- they

18  simply do not support that alleged belief on the part of the

19  debtor, and I find further that such alleged belief on the

20  part of the debtor is clearly not credible and not credible

21  as a matter of law.  The debtor has not met his burden of

22  presenting evidence which is sufficient to enable a

23  reasonable or rational trier of fact to find in the debtor's

24  favor on this intent to defraud element based on that

25  explanation by the debtor.

1       With respect to debtor's failure to disclose in his

2   original Schedule B the 2002 GMC Envoy, debtor argues that he

3   did not believe he had any duty to disclose that vehicle, his

4   ownership of that vehicle, in Schedule B because the vehicle

5   did not have any value, so the theory there is debtor

6   believed that he only had to disclose in his schedules his

7   interest in assets that had value, something more than zero

8   value.  First, there is no evidence to support that

9   explanation or that excuse or that assertion by the debtor

10   about his -- what he subjectively believed.  Second, the

11   Court finds that explanation is directly contradicted by the

12   other provisions in the debtor's Schedule B that the debtor

13   did file on March 25, 2013, regarding assets that the debtor

14   did disclose.  That Schedule B, Docket Number 1, disclosed

15   several assets which the debtor listed as having a current

16   value of zero, no value, yet the debtor disclosed these

17   items, and those items specifically in Schedule B, Item 9 --

18   this is Docket Number 1, Item 9, Grange term life insurance

19   policy, no cash value, current value zero.  That was

20   listed -- scheduled by the debtor even though it had no

21   value.  Item 13, A&F Properties, two rental properties, value

22   listed zero.  That's under Item 13 for stock and interest in

23   incorporated or unincorporated businesses.  Also under Item

24   13 the debtor listed Palandin Innovations, LLC, current value

25   zero, so these are assets that the debtor believed because he

1   said so in his Schedule B must have believed had a current

2   value of zero, yet the debtor disclosed these in his Schedule

3   B.  That clearly undermines the debtor's assertion that he

4   didn't disclose his interest in this 2002 GMC Envoy vehicle

5   in answering Question 25 of the Schedule B because it didn't

6   have any value and he didn't think he had to disclose things

7   that didn't have any value.

8          Further, the debtor's explanation or assertion is

9   just clearly not credible as a matter of law.  The debtor's

10  explanation -- even if the Court can consider on a motion for

11  summary judgment the unverified assertions in the debtor's

12  answer that was filed in this case at Docket Number 5, in my

13  view, the evidence in the record and the materials in the

14  record under Rule 56(c) that the Court is considering are not

15  sufficient to support -- are not to be evidence upon which or

16  materials upon which the trier of fact could reasonably or

17  rationally find for the debtor on this element of intent to

18  defraud.

19         In addition, the -- and, by the way, the evidence

20  does not rise to beyond what the case law calls a -- the mere

21  existence of a scintilla of evidence in support of the

22  defendant-debtor's position and arguments on this intent

23  element, and, of course, the case law clearly requires more

24  than a showing of the mere existence of a scintilla of

25  evidence in order to avoid summary judgment by the nonmoving

1  party.

2          With respect to the U.S. Trustee's argument that the
3  debtor is guilty of reckless disregard for the truth of the
4  statements in the debtor's schedules, I agree.  The U.S.
5  Trustee has demonstrated beyond a genuine issue of material
6  fact that with respect to the false oaths and the
7  nondisclosures I have identified in this bench opinion, the
8  debtor is certainly guilty of, at a minimum, reckless
9  disregard as to whether the statements in his Schedule B and
10  his statement of financial affairs and the testimony he gave
11  in his -- testimony in the first meeting of creditors is
12  true.  That's shown clearly by -- and, in my view, as a
13  matter of law, by the numerous inaccuracies in the debtor's
14  original Schedule B, statement of financial affairs, and 341
15  meeting testimony, and that reckless disregard for truth, in
16  my view, is further highlighted and demonstrated by the fact
17  that the debtor -- even though the debtor has been
18  represented by an attorney from the very beginning of this --
19  his bankruptcy case and before that in preparing his
20  bankruptcy case, the debtor -- and even though the U.S.
21  Trustee filed the complaint in this case last June, the
22  debtor has never amended the admittedly erroneous and false
23  Schedule B and admittedly erroneous and false statement of
24  financial affairs that the debtor originally filed until last
25  night at 4:52 p.m. when the debtor filed the -- finally filed

1  the amended Schedule B and statement of financial affairs and

2  other papers in the main bankruptcy case at Docket Number 43.

3  Based upon the debtor's reckless disregard for the

4  truth of the sworn statements or statements under oath that

5  he made in his Schedule B, statement of financial affairs,

6  and 341 meeting testimony under oath as well as the other

7  circumstances and points that I have discussed here, in my

8  view, there is no genuine issue of material fact, and the

9  U.S. Trustee is entitled to judgment as a matter of law on

10 the -- that last element under Keeney, the fourth element,

11 that the debtor made these false statements with fraudulent

12 intent, and, therefore, based on that and based on what I

13 said earlier about the other elements, in my view, the U.S.

14 Trustee is entitled to summary judgment on the U.S. Trustee's

15 Section 727(a)(4)(A) claim, and the Court will grant the

16 motion for those reasons. And I'll prepare and enter an

17 order reflecting this ruling and granting the U.S. Trustee's

18 motion for summary judgment. That's Count II of the U.S.

19 Trustee's complaint, which is the only count remaining in

20 this case after the Count I was voluntarily dismissed in the

21 final pretrial order previously entered, so I'll prepare and

22 enter the order. Thank you.

23 MR. VELARDO:  Thank you, your Honor.

24 MR. COWLEY:  Thank you, your Honor.

25 (Proceedings concluded at 12:45 p.m.)

INDEX

<u>WITNESSES:</u>

None

<u>EXHIBITS:</u>

None

I certify that the foregoing is a correct transcript from the sound recording of the proceedings in the above-entitled matter.

/s/ Lois Garrett                          February 1, 2014
_____                   _____
Lois Garrett