UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CHRISTIE MICHELE WANDRIE,

          Debtor.
_____/

Case No. 13-44268

Chapter 7

Judge Thomas J. Tucker

GENE R. KOHUT, TRUSTEE,

          Plaintiff,

v.

CHRISTIE MICHELE WANDRIE,

          Defendant.
_____/

Adv. Pro. No. 13-4636

**OPINION STATING THE COURT'S PARTIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER TRIAL**

In this adversary proceeding, Plaintiff Trustee Gene R. Kohut seeks the denial of Debtor Christie Michele Wandrie's discharge under 11 U.S.C. §§ 727(a)(4)(D) (Count I); 727(a)(3) (Count II); 727(a)(5) (Count III); 727(a)(4)(A) (Count IV); and 727(a)(2)(A) (Count V). This will state the Court's *partial* findings of fact and conclusions of law, after trial.

These are partial findings and conclusions only, and are made as such at this time because the Court intends to defer making the remainder of its findings and conclusions, and to defer making its ultimate decision in this adversary proceeding, until after the Court holds a hearing on the show-cause order (directed to the Debtor's former attorney, Todd M. Gers) that the Court is filing today in the main bankruptcy case.

**I. Background**

Before trial, both parties moved for summary judgment on Count IV of the Plaintiff's Complaint Objecting to Discharge (Docket # 1), which count seeks a denial of discharge under 11 U.S.C. § 727(a)(4)(A) (Docket ## 23, 29). The United States Court of Appeals for the Sixth Circuit has held that:

> [i]n order to deny a debtor discharge under [11 U.S.C. § 727(a)(4)(A)], a plaintiff must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case.

*Keeney v. Smith* (*In re Keeney*), 227 F.3d 679, 685 (6th Cir. 2000) (citing *Beaubouef v. Beaubouef* (*In re Beaubouef*), 966 F.2d 174, 178 (5th Cir. 1992)).

On February 5, 2014, the Court held a hearing on the parties' cross-motions for partial summary judgment. During the hearing, the Court gave an oral bench opinion regarding the motions, and then issued an order denying the motions, but determining, under Fed.R.Civ.P. 56(g), that certain material facts were established. (*See* "Order Denying Plaintiff's Motion for Partial Summary Judgment and Defendant's Cross-Motion for Partial Summary Judgment, But Determining, Under Fed.R.Civ.P. 56(g), That Certain Material Facts Are Established," (Docket # 49, the "February 5, 2014 Order). The February 5, 2014 Order stated, in part:

> 3. Under Fed.R.Civ.P. 56(g),[1] applicable to this adversary

---

[1] Rule 56(g) states:

> If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.

proceeding under Fed.R.Bankr.P. 7056, the Court determines that there is no genuine issue of material fact with respect to the following: that element numbers 1, 2, and 5 set forth in [*Keeney v. Smith* (*In re Keeney*), 227 F.3d 679, 685 (6th Cir. 2000)] . . . are established with respect to each of the following statements made by the Defendant Debtor:

a.  Debtor's failure to list, at Item 2 in her original Schedule B (Docket # 1, Case No. 13-44268, at 7) her interest in a deposit account at Motor City Credit Union.

b.  Debtor's failure to list, in her original Schedule G (Docket # 1, Case No. 13-44268, at 19) her interest in a land contract for the purchase of real property located at 3635 Indian Lake Road, Oxford, MI 48370 ("Indian Lake Road Property").

c.  Debtor's description, at Item 10 in her original Statement of Financial Affairs (Statement of Financial Affairs, Docket # 1, Case No. 13-44268, at 29), of the July 2012 sale of real property located at 3[7]22 Estate Drive, Oxford, Michigan ("3[7]22 Estate Drive Property"), which the Debtor described as "home sold via short sale for $85,000; Debtor and non-filing spouse jointly owed approx. $210,000. No proceeds were received from sale." The statements in this description that the home was sold "via short sale" and that "[n]o proceeds were received from the sale" were false.[2]

d.  Debtor's failure to list, in her original Schedule F (Docket # 1, Case No. 13-44268, at 16-18) her debt arising from a $70,000 unsecured loan from Peter and Genevieve Wandrie to the Debtor and her non-debtor spouse, to enable them to redeem and then later sell the 3[7]22 Estate Drive Property.

---

[2] In Item 10 of the Debtor's original Statement of Financial Affairs (Statement of Financial Affairs, Docket # 1, Case No. 13-44268, at 29; Pl.'s Trial Ex. 1), Debtor erroneously listed the address of the 3722 Estate Drive Property as "3422 Estate Drive, Oxford, MI 48371," and erroneously listed the date of the sale of the 3722 Estate Drive Property as "July 2012."

3

and

    e.    Debtor's failure to list, at Item 10 in her original Statement of Financial Affairs (Statement of Financial Affairs, Docket # 1, Case No. 13-44268, at 29) the February 2013 sale by the Debtor and her husband of a jointly owned 2007 Saturn Outlook vehicle.

**II. The Court's partial findings of fact and conclusions of law after trial**

On February 18, 2014, the Court held a trial in this adversary proceeding. Based on the evidence presented at trial, the Court now makes the following *partial* findings of fact and conclusions of law.

The Court finds and concludes that element numbers 1, 2, and 5 set forth in *Keeney,* as quoted above, are established by a preponderance of the evidence, with respect to each of the following statements made by the Defendant in her Schedules and Statement of Financial Affairs. The Court finds, therefore, among other things, that each of the following statements made by the Debtor were false:[3]

1. Debtor's failure to list, at Item 2 in her original Schedule B (Schedule B, Docket # 1, Case No. 13-44268, at 7; Pl.'s Trial Ex. 1) her interest in a deposit account at Motor City Credit Union.[4]

2. Debtor's failure to list, at Item 2 in her original Schedule B (Schedule B, Docket # 1, Case No. 13-44268, at 7; Pl.'s Trial Ex. 1) her interest in a deposit

---

[3] The following list includes, and the Court now reiterates, the findings made in the Court's February 5, 2014 Order.

[4] In Item 2 of Debtor's *amended* Schedule B, Debtor later listed the Motor City Credit Union Account, and stated with regard to this account: "The [D]ebtor and her non debtor spouse never used the account, they only opened the account to get a car loan, which required a deposit of $5.00." (Amended Schedule B, Docket # 26, Case No. 13-44268, at 4; Def.'s Trial Ex. B.)

account at Alliance Catholic Credit Union.[5]

3. Debtor's checking of the box marked "None" on Item 11 of her original and amended Statements of Financial Affairs, which requires Debtor to list closed financial accounts. (Statement of Financial Affairs, Docket # 1, Case No. 13-44268, at 29; Pl.'s Trial Ex. 1; Amended Statement of Financial Affairs, Docket # 26, Case No. 13-44268, at 16; Def.'s Trial Ex. B.)[6]

4. Debtor's failure to list, in her original Schedule G (Schedule G, Docket # 1, Case No. 13-44268, at 19; Pl.'s Trial Ex. 1) her interest in a land contract for the purchase of real property located at 3635 Indian Lake Road, Oxford, MI 48370 ("Indian Lake Road Property").[7]

5. Debtor's failure to disclose in Item 10 in her original Statement of Financial Affairs (Statement of Financial Affairs, Docket # 1, Case No. 13-44268, at 29; Pl.'s Trial Ex. 1) or in her amended Statement of Financial Affairs (Amended Statement of Financial Affairs, Docket # 26, Case No. 13-44268, at 16; Def.'s Trial Ex. B) payments made to Genevieve Wandrie on the land contract for the Indian Lake Road Property entered into on February 1, 2010.[8]

---

[5] In Debtor's *amended* Schedule B, Debtor later listed the Alliance Catholic Credit Union account in Item 2, and with regard to this account, stated:

> This account is in the name of the non debtor spouse. Based on the huge income disparity and funds deposited into the account, the [D]ebtor's interest in the account is believed to be zero. Additionally, there is usually no money left over at the end of the month.

(Amended Schedule B, Docket # 26, Case No. 13-44268, at 4; Def.'s Trial Ex. B.)

[6] Debtor testified at her deposition and at trial that she had an account with Alliance Catholic Credit Union which was closed. (Dep. Tr. of Christie Michele Wandrie (Pl.'s Trial Ex. 3) at 41; Trial Tr. at 44 ln.10 through 46 ln.10.)

[7] On Debtor's *amended* Schedule A, Debtor later listed a "Land Contract Vendee" interest in the Indian Lake Road Property, and indicated that the amount owed under that land contract, as listed in Debtor's Amended Schedule G, is $261,727.00. In Debtor's Amended Schedule G, Debtor listed "Peter and Genevieve Wandrie" as the other parties to the executory land contract of the Indian Lake Road Property, and describes their interest in the executory land contract as follows: "Land Contract Vendors on property listed in Schedule A. Balance on land contract $261,727.00." (Amended Schedules A and G, Docket # 26, Case No. 13-44268, at 3, 11; Def.'s Trial Ex. B.)

[8] Debtor testified at trial that she and her husband have been making monthly payments to Genevieve Wandrie under the land contract for the Indian Lake Road Property since entering into the land contract on February 1, 2010. (Trial Tr. (Docket # 59) at 18 ln. 19 through 21 ln.13.) A copy of the

6.  Debtor's description, at Item 10 in her original Statement of Financial Affairs (Statement of Financial Affairs, Docket # 1, Case No. 13-44268, at 29; Pl.'s Trial Ex. 1), of the August 2012 sale of real property located at 3722 Estate Drive, Oxford, Michigan ("3722 Estate Drive Property"), which the Debtor described as "home sold via short sale for $85,000; Debtor and non-filing spouse jointly owed approx. $210,000. No proceeds were received from sale." The statements in this description that the home was sold "via short sale" and that "[n]o proceeds were received from the sale" were false.[9]

7.  Debtor's failure to list, in her original Schedule F (Schedule F, Docket # 1, Case No. 13-44268, at 16-18; Pl.'s Trial Ex.1) her debt arising from a $70,000 unsecured loan from Peter and Genevieve Wandrie to the Debtor and her non-debtor spouse, to enable them to redeem and then later sell the 3722 Estate Drive Property.[10]

8.  Debtor's failure to disclose in either Item 3 or 10 in her original Statement of Financial Affairs (Statement of Financial Affairs, Docket # 1, Case No. 13-44268,

---

land contract for the Indian Lake Road Property is in the record as Def.'s Trial Ex. E.

[9] In Item 10 of the Debtor's original Statement of Financial Affairs (Statement of Financial Affairs, Docket # 1, Case No. 13-44268, at 29), Debtor erroneously listed the address of the 3722 Estate Drive Property as "3422 Estate Drive, Oxford, MI 48371," and erroneously listed the date of the sale of the 3722 Estate Drive Property as "July 2012."

Item 10 of Debtor's *amended* Statement of Financial Affairs (Amended Statement of Financial Affairs, Docket # 26, Case No. 13-44268, at 16; Def.'s Trial Ex. B) later indicated that on April 6, 2012,

> The Debtor and the non debtor spouse borrowed money from his parents to redeem the property located at 3722 Estate Drive, Oxford, MI for approximately $70,000.00, the property was then sold 9/17/12 to Jeff Laboda for $85,000.00, and the proceeds were used to payoff the 2nd mortgage (PNC BANK), and the balance of the proceeds of $15,490.65 were received in the form of a check from Complete Title Services and signed over to his parents in repayment of the loan.

The sale of the 3722 Estate Drive Property actually closed on August 20, 2012. (*See* Def.'s Trial Ex. S ("Settlement Statement (HUD-1).")

[10] In Debtor's *amended* Schedule F, Debtor later listed Peter and Genevieve Wandrie as creditors holding an unsecured nonpriority claim in the amount of $48,000.00, based on a "[l]oan to redeem foreclosed property." (Amended Statement of Financial Affairs, Case No. 13-44268, Docket # 26, at 10; Def.'s Trial Ex. B.)

6

at 27, 29; Pl.'s Trial Ex. 1), a transfer to Genevieve Wandrie of $15,471.50 in proceeds from the August 2012 sale of the 3722 Estate Drive Property.[11]

9. Debtor's failure to list in Item 2 in her original Statement of Financial Affairs (Statement of Financial Affairs, Docket # 1, Case No. 13-44268, at 26; Pl.'s Trial Ex. 1) or in Debtor's Amended Statement of Financial Affairs (Amended Statement of Financial Affairs, Docket # 26, Case No. 13-44268, at 13; Def.'s Trial Ex. B) rental income for the 3722 Estate Drive Property.[12]

10. Debtor's failure to disclose in Item 3 in her original Statement of Financial Affairs (Statement of Financial Affairs, Docket # 1, Case No. 13-44268, at 27; Pl.'s Trial Ex. 1) or in Debtor's Amended Statement of Financial Affairs (Amended Statement of Financial Affairs, Docket # 26, Case No. 13-44268, at 14; Def.'s Trial Ex. B) monthly loan repayments to Genevieve Wandrie in the amount of $600.00 on the loan to redeem the 3772 Estate Drive Property.[13]

11. Debtor's failure to list in her original Schedule F the balance owing on the $70,000.00 unsecured loan from Peter and Genevieve Wandrie, made in April 2012 to enable Debtor and her husband to redeem the 3772 Estate Drive Property from a foreclosure sale (Schedule F, Docket # 1, Case No. 13-44268, at 18; Pl.'s Trial Ex. 1).[14]

---

[11] In Debtor's *amended* Statement of Financial Affairs, Debtor disclosed this transfer in Items 3 and 10 (Amended Statement of Financial Affairs, Docket # 26, Case No. 13-44268, at 14, 16; Def.'s Trial Ex. B). However, in Item 10, Debtor erroneously states that the 3722 Estate Drive Property was sold on "9/17/12," and she erroneously states that the amount of the proceeds transferred from the sale was "$15,490.00." *See* discussion *supra* note 9.

[12] Debtor testified at the § 341 meeting of creditors that in 2012, she had a renter at the 3722 Estate Drive Property, who" paid [rent] for a couple of months, and then . . . quit paying." (Def.'s Trial Ex. C (Tr. of § 341 Meeting of Creditors), at 11.) Debtor also testified at trial that she had a tenant at the 3772 Estate Drive Property who paid rent, but that she could not remember if she received rental income within two years before filing. (Trial Tr. at 119 ln. 14 through 120 ln. 24.)

[13] On her spouse's original Schedule J, Debtor lumped the $600.00 loan repayments to Genevieve Wandrie in with the monthly mortgage payments. (Docket # 1, Case No. 13-44268, at pdf. p. 23.) Debtor listed a $1,900.00 monthly mortgage payment. Only $1,300.00 was her actual monthly mortgage payment, and the $600.00 balance was for undisclosed loan repayments to Genevieve Wandrie for the redemption of the 3772 Estate Drive Property. (*See* Dep. Tr. of Christie Michele Wandrie (Pl.'s Trial Ex. 3) at 14-16, 57-58; Def.'s Trial Ex. R (Redemption Certificate)).

[14] *See* Def.'s Trial Ex. R (Redemption Certificate). In Debtor's *amended* Schedule F, Debtor later listed Peter and Genevieve Wandrie as creditors holding an unsecured nonpriority claim in the amount of $48,000.00, based on a "[l]oan to redeem foreclosed property." (Amended Statement of Financial Affairs, Case No. 13-44268, Docket # 26, at 10; Def.'s Trial Ex. B.)

7

12. Debtor's failure to list separately on the original Schedule J for Debtor and her husband the ongoing $600.00 monthly payments on the $70,000.00 loan to Peter and Genevieve Wandrie (Docket # 1, Case No. 13-44268, at 23; Pl.'s Trial Ex. 1).[15]

13. Debtor's failure to list, at Item 10 in her original Statement of Financial Affairs (Statement of Financial Affairs, Docket # 1, Case No. 13-44268, at 29; Pl's Trial Ex.1) the February 2013 sale by the Debtor and her husband of a jointly owned 2007 Saturn Outlook vehicle.[16]

14. Debtor's checking of the box on her original Schedule J (Schedule J, Docket # 1, Case No. 13-44268, at 23; Pl's Trial Ex.1) indicating that "[D]ebtor's spouse maintains a separate household."[17]

15. Debtor's failure to list in Item 3 in her original Statement of Financial Affairs (Statement of Financial Affairs, Docket # 1, Case No. 13-44268, at 27; Pl.'s Trial Ex. 1) payment of income tax made to the Internal Revenue Service in February 2013 in the amount of $637.00.[18]

16. Debtor's statement in her original Schedule J (Schedule J, Docket # 1, Case No. 13-44268, at 22; Pl.'s Trial Ex. 1) that her monthly household expenses exceeded

---

[15] *See* discussion *supra* Item No. 10 and note 13.

[16] Debtor's *amended* Statement of Financial Affairs later stated that in February 2013,

> The Debtor Jointly owned a 2007 Saturn with her non debtor spouse, and the transmission blew, which they could not afford to fix, so they decided to sell the vehicle, and used the proceeds to use as a down payment ($3,500) on a leased vehicle, and used the balance of the proceeds to pay tax liability ($2,100).

(Amended Statement of Financial Affairs, Case No. 13-44268, Docket # 26, at 16; Def.'s Trial Ex. B.)

[17] Debtor testified at trial that she and her husband reside together at the Indian Lake Road Property and have lived there together since they bought the property in 2010. (Trial Tr. (Docket # 59) at 19 ln. 7 through ln. 14, 48 ln. 23 through 49 ln. 22.) To date, however, Debtor has not amended Schedule J to correct the false statement that she and her husband maintain separate households.

[18] Item 3 of Debtor's *amended* Statement of Financial Affairs (Amended Statement of Financial Affairs, Case No. 13-44268, Docket # 26 at 14; Def.'s Trial Ex. B), later stated that in February of 2013, Debtor made payments totaling $637.00 to the Internal Revenue Service.

8

her monthly income by $2,813.03.[19]

17. Debtor's listing of the "2007 Dodge Charger" on Line 25 on both her original Schedule B and her amended Schedule B, when such vehicle was not owned by her. (Schedule B, Docket # 1, Case No. 13-44268, at 10; Pl.'s Trial Ex. 1; Amended Schedule B, Docket # 26, Case No. 13-44268, at 6; Def.'s Trial Ex. B.)[20]

18. Debtor's statement in her original Schedule J (Schedule J, Docket # 1, Case No. 13-44268, at 22) that she is paying $187.00 per month for an auto installment loan, when such loan is for the Dodge Charger that is owned by her husband, and which is being paid by her husband, not by her.[21]

**Signed on May 1, 2014**　　　　　　　　　　　　　　**/s/ Thomas J. Tucker**
　　　　　　　　　　　　　　　　　　　　　　　　**Thomas J. Tucker**
　　　　　　　　　　　　　　　　　　　　　　　　**United States Bankruptcy Judge**

---

[19] Debtor testified at trial that she knew that there was a negative balance, but she didn't think it was as much as was in her Schedule J (-$2,813.03). Debtor never amended Schedule J to correct this false statement. (Trial Tr. at 38 lns. 22-23.)

[20] *See* Def.'s Trial Ex. AA (Certificate of Title for Dodge Charger showing owner of Dodge Charger as Matthew Thomas Wandrie); Dep. Tr. of Christie Michele Wandrie (Pl.'s Trial Ex. 3) at 39 (Debtor is not the owner of the Dodge Charger); Trial Tr. (Docket # 59) at 46 ln. 16 through 48 ln. 22.

[21] *See* Def.'s Trial Ex. AA (Certificate of Title for Dodge Charger showing owner of Dodge Charger as Matthew Thomas Wandrie); Dep. Tr. of Christie Michele Wandrie (Pl.'s Trial Ex. 3) at 39 (Debtor is not the owner of the Dodge Charger); Trial Tr. (Docket # 59) at 46 ln. 16 through 48 ln. 22.